W. DEREK SHAKABPA, Senior Trial Attorney
E-mail: wshakabpa@cftc.gov
DAVID ACEVEDO, Chief Trial Attorney
E-mail: dacevedo@cftc.gov
STEPHEN J. OBIE, Regional Counsel
E-mail: sobie@cftc.gov
Division of Enforcement
U.S. Commodity Futures Trading Commission
140 Broadway, 19th Floor
New York, NY 10005
Tel: (646) 746-9748
Fax: (646) 746-9940

Local Counsel:
DANIEL J. GIBBONS
Assistant U.S. Attorney
Deputy Chief, Civil Division
970 Broad Street
Newark, NJ 07102
Tel: (973) 645-2828
E-mail:  daniel.gibbons@usdoj.gov

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **U.S. Commodity Futures Trading Commission,**<br><br>**Plaintiff,**<br><br>vs.<br><br>**Victor Eugene Cilli and Progressive Investment Funds LLC,**<br><br>**Defendants.** | **Case No.:**<br><br>**COMPLAINT FOR INJUNCTIVE AND OTHER EQUITABLE RELIEF AND FOR CIVIL MONETARY PENALITES PURSUANT TO THE COMMODITY EXCHANGE ACT, AS AMENDED, 7 U.S.C. §§ 1 *et seq.*** |

## I.   SUMMARY

1.      From at least September 2006 through February 2009, Defendants Victor E. Cilli ("Cilli") and Progressive Investment Funds LLC ("PIF") (collectively "Defendants"), a company solely owned and controlled by Cilli, engaged in a Ponzi scheme to defraud at least four commodity pool participants of approximately $506,000 in violation of the anti-fraud provisions of the Commodity Exchange Act (the "Act"), as amended, to be codified at 7 U.S.C. § 1 *et seq*.

2.      Through false statements in offering memoranda and verbal misrepresentations, the Defendants misled pool participants about Cilli's business and futures trading track record and provided the pool participants with false and misleading statements showing profits when, in fact, most of Cilli's trading resulted in losses.

3.      Defendant Cilli misappropriated at least $200,000 of pool funds for his own personal use.

4.      Defendant Cilli also provided false information to the National Futures Association ("NFA") claiming the pool never had any pool participants when he knew it had at least four participants.  Cilli also failed to maintain documents concerning the pool that PIF was required to maintain, including the pool offering memoranda.

5.      PIF failed to send several pool participants quarterly net asset value ("NAV") statements, and never sent any pool participants an annual report as required by Commodity Futures Trading Commission ("Commission" or "CFTC") Regulations.

6.      As a result, Defendants violated Section 4b(a)(2)(i)-(iii) of the Act (commodities fraud), 7 U.S.C. § 6b(a)(2)(i)-(iii) (2006), for conduct before June 18, 2008, and for conduct on or after June 18, 2008, Defendants violated Section 4b(a)(1)(A)-(C) of the Act, as amended by

the Food, Conservation, and Energy Act of 2008, Pub. L. No. 110-246, Title XIII (the CFTC

Reauthorization Act of 2008 ("CRA")), § 13101-13204, 122 Stat. 1651 (enacted June 18, 2008),

to be codified at 7 U.S.C. § 6b(a)(1)(A)-(C).

      7.     Defendants also violated Section 4n(3)(A) (failure of a pool operator to keep pool

records), 4o(1) (fraud by a pool operator), and 9(a)(4) (false statements to the NFA) of the Act,

as amended by the CRA, to be codified at 7 U.S.C. §§ 6n(3)(A), 6o(1), and 13(a)(4), and CFTC

Regulations 1.31(a) (failure of a registrant to maintain records) and 4.7(b)(2)-(4) (failure to send

quarterly and annual reports and failure to maintain such reports), 17 C.F.R. §§ 1.31(a) and

4.7(b)(2)-(4), 17 C.F.R. §§ 1.31(a) and 4.7(b)(2)-(4) (2010) .

      8.     As a person who, directly or indirectly, controlled PIF and knowingly induced

PIF's violations of the Act and CFTC Regulations, or did not act in good faith, Defendant Cilli is

also liable for PIF's violations pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b).

      9.     Defendant PIF is liable for Cilli's violations of the Act and CFTC Regulations

pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B), and CFTC Regulation 1.2, 17

C.F.R. § 1.2, because Cilli was an employee of PIF whose acts, omissions and failures in

violation of the Act and CFTC Regulations occurred in the course of his employment.

      10.    Accordingly, the Commission brings this action, pursuant to Section 6c of the

Act, 7 U.S.C. § 13a-1, to enjoin Defendants' unlawful acts and practices and to compel their

compliance with the Act and CFTC Regulations.  In addition, the Commission seeks civil

monetary penalties and remedial ancillary relief, including, but not limited to, trading and

registration bans, disgorgement, restitution, pre- and post-judgment interest, and such other relief

as the Court may deem necessary and appropriate.

11.     Unless restrained and enjoined by the Court, Defendants are likely to continue to engage in the acts and practices alleged in this Complaint and similar acts and practices as more fully described below.

## II.     JURISDICTION AND VENUE

12.     The Court has jurisdiction over this action pursuant to Section 6c(a) of the Act, 7 U.S.C. § 13a-1(a), which authorizes the Commission to seek injunctive relief against any person whenever it shall appear to the Commission that such person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of the Act or any rule, regulation, or order thereunder.

13.     Venue properly lies with this Court pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-1(e), in that Defendants reside in this District, transacted business in this District, and the acts and practices in violation of the Act have occurred, are occurring, or are about to occur within this District, among other places.

## III.     THE PARTIES

14.     **Plaintiff Commodity Futures Trading Commission** is an independent federal regulatory agency that is charged by Congress with the administration and enforcement of the Act, as amended, to be codified at 7 U.S.C. §§ 1 *et seq.*, and the CFTC Regulations promulgated thereunder, 17 C.F.R. §§ 1.1 *et seq.* (2010).  The Commission maintains its principal office at Three Lafayette Centre, 1155 21st Street, NW, Washington, DC 20581.

15.     **Defendant Victor Eugene Cilli** is a New Jersey resident who resided in Hackensack, New Jersey during the relevant period of the Complaint.  Cilli has been registered with the CFTC as an Associated Person ("AP") of PIF since September 2006 and is the owner and President of PIF.

16.     **Defendant Progressive Investment Funds LLC** is a Delaware limited liability company formed in August 2006 with its last known business address at 170 Prospect Avenue, PH2, Hackensack, NJ 07601.  Since September 2006, PIF has been registered with the CFTC as a Commodity Pool Operator ("CPO").  PIF is the CPO and General Partner of the commodity pool Progressive Managed Futures Fund LP ("PMFF"), a Delaware limited partnership.

## IV.     FACTS

17.     In or around September 2006, Cilli registered PIF as a CPO with the Commission and registered himself as an AP of PIF.  A CPO is a person or entity engaged in a business similar to an investment trust or a syndicate and who solicits or accepts funds, securities, or property for the purpose of trading commodity futures contracts.  7 U.S.C. § 1a(5).  Cilli is the owner and President of PIF.

18.     Cilli formed PMFF in or around September 2006 as a commodity pool with PIF acting as the pool's CPO.  A commodity pool is an investment trust, syndicate, or similar form of enterprise operated for the purpose of trading commodity futures or options contracts.  17 C.F.R. § 4.10(d).  A pool participant is any person that has any direct financial interest in a commodity pool.  17 C.F.R. § 4.10(c).

19.     On or about October 18, 2006, Cilli notified NFA that PIF was operating under the exemptions of CFTC Regulation 4.7, which include that an exempt CPO is only required to send pool participants quarterly NAV statements and an annual report.  Regulation 4.7 exempts CPOs from several requirements so long as the participants in the pool are "qualified eligible persons" as defined by Regulation 4.7(a).  However, exempt CPOs under this Regulation must, at a minimum, provide pool participants with quarterly and annual financial reports that contain NAV of the pool and must retain such reports.  17 C.F.R. §§ 4.7(b)(2)-(4).

20.     Cilli solicited at least four individuals to become pool participants in PMFF.  Each of these individuals wrote a check payable to PMFF directly for their respective investments or wired their funds directly into PMFF's bank account according to Cilli's instructions.  Cilli admitted to CFTC staff in testimony that he originally intended these individuals to be investors when he solicited their investments.

21.     Cilli represented to prospective pool participants that he was a successful businessman and a profitable trader.  Cilli also told prospective pool participants that their funds would be pooled together and traded using his proprietary trading strategy and that he had been successful trading futures in the past.

22.     The PMFF Offering Memorandum stated that Cilli will be primarily responsible for the investment decisions and activities of the pool.  According to the PMFF Offering Memorandum, Cill had over 20 years entrepeneurial experience and had been very successful in the past with his business ventures.  The PMFF Offering Memorandum also represented that since 2003, Cilli had been very successful at managing money and trading various financial markets, including commodity futures, and had devopled a proprietary trading strategy that would be used by the pool.

23.     Cilli failed to disclose in the PMFF Offering Memorandum that in December 2002, he had filed for Chapter 7 bankruptcy with debts exceeding $13.5 million, demonstrating his past business experiences and ability to manage money were not successful.

24.     Cilli also failed to disclose in the PMFF Offering Memorandum that his only actual prior experience trading commodity futures occurred for one month, in April 2006, in an account in the name of Grey Market Inc., an entity solely owned by Cilli.  Cilli also had a personal commodity futures account wherein he traded commodity futures contracts between

6

September and December 2007, although this account was traded after Cilli started trading for PMFF. The latter account had a net loss of over $8,000.

25.     Cilli represented in the PMFF Offering Memorandum that the pool had an accountant and general counsel in place. However, PMFF never had in place a general counsel or accountant during the relevant time period.

26.     The pool participants invested a total of approximately $506,000 in PMFF. Cilli deposited the pool participants' funds in an account in the name of PMFF at Bank of America. Cilli also opened an account at Bank of America in the name of PIF.

27.     In or around September 2006, Cilli opened a trading account in the name of PMFF at Lind-Waldock (now MF Global Inc.), a registered Futures Commission Merchant, and traded primarily S&P 500 e-Mini futures contracts, on or subject to the rules of the Chicago Mercantile Exchange ("CME"), a contract market designated under the Act, from approximately January through October 2007. Cilli had sole trading authority over the PMFF account. The PMFF trading account remained open until approximately February 2009.

28.     In the MF Global, Inc. account opening documents for PMFF, Cilli wrote that the nature of PMFF's business was a "commodity pool."

29.     Cilli only traded approximately $263,000 of the PMFF's funds and lost approximately $200,168 (net trading losses). Seven out of the nine months in 2007 that Cilli actively traded the pool's account resulted in net monthly trading losses.

30.     Cilli withdrew approximately $62,638 from PMFF's trading account and deposited it back into PMFF's bank account. However, Cilli also transferred approximately $55,489 from PMFF's bank account to PIF's bank account, which Cilli then used, in part, to pay for personal expenses.

31.     Cilli never disclosed to the PMFF pool participants that only about half of their funds were traded or that  most of his trading resulted in net losses.

32.     Cilli also transferred funds out of the PMFF's bank account for his own personal use.  Cilli transferred approximately $223,367 from PMFF's bank account to Cilli's personal bank account.  Cilli never disclosed to the pool participants that he had misappropriated significant amounts of the pool funds to his personal bank account, nor were these transfers authorized by the pool participants.

33.     On May 9, 2007, Cilli withdrew approximately $30,000 in cash from PIF's bank account, which had been funded with the pool participants' funds.

34.     Cilli used the PIF bank account, which received at least $55,489 directly from the PMFF, to pay for unauthorized personal expenses including meals, entertainment, motorcycle payments, and hair salon visits.

35.     Collectively, during the relevant period, Cilli misappropriated at least $200,000 from the pool for his own personal use.

36.     Between January and September 2007, Cilli sent at least one pool participant false periodic statements claiming that the pool had made money, when in fact, the pool had lost money trading.  These false periodic statements showed profits ranging from approximately 0.675 % to 7.8%.

37.     On or about April 6, 2007, Cilli sent an email to another pool participant falsely claiming a 7.16% gain for March 2007 or "$7,160 additional profit."

38.     On or about July 11, 2007, Defendant Cilli sent an email to a pool participant attaching a June monthly statement that falsely showed 1.624% profit on a $200,000 investment.

39.     On or about August 13, 2007, Defendant Cilli sent an email to a pool participant attaching a July monthly statement that falsely showed 1.484% profit on a $200,000 investment.

40.     Defendants also issued false 1099s for 2007 to at least two pool participants that showed profits in their investments.  These 1099s were false because in 2007, PMFF had net losses in its trading account.  For example, one pool participant received a 1099 which showed a profit of $22,619 when, in fact, her investment lost money in 2007.

41.     The 1099-B (proceeds from broker transactions) issued by MF Global for PMFF's trading account shows approximately $200,168 in net trading losses for 2007.

42.     Cilli's representations regarding profits in the pool were false because the pool's trading account resulted in net losses for the life of the trading account.

43.     Out of the approximately nine months that Cilli actively traded the pool's account, only two months had a net profit and seven months had a net loss.  Defendants never disclosed these losses to the pool participants.

44.     In order to convince pool participants that these profit statements were true, Cilli returned some funds back to the pool participants in a manner known as a Ponzi scheme. Specifically, these Ponzi payments were not from actual trading profits but from funds of existing pool participants.

45.     Although one pool participant received NAV statements, these NAV statements were false because Defendants did not obtain trading profits during the time these NAV statements were sent,  PIF never provided the rest of the pool participants with quarterly statements containing the NAV of the pool.

46.     During the relevant time period, PIF never provided the pool participants with an annual report containing a) a statement of financial condition, b) a statement of income (loss) of that year, and c) appropriate footnote disclosure and any other material information.

47.     The NFA is a industry-wide, registered futures association and self-regulatory organization for the U.S. futures industry.  From approximately May to June 2008, the NFA conducted an investigation of PIF's activities.  As part of its official duties under the Act, NFA requested that Defendants provide documents concerning all PMFF pool participants and PIF's activities.

48.     Instead of providing the requested documents, Cilli falsely told NFA that there were never any participants since the pool's inception and that no documents existed regarding the pool's activities.  Defendants never provided the NFA any documents relating to PIF or PMFF.

49.     In June 2008, NFA issued a Member Responsibility Action ("MRA") against PIF and Cilli for their failure to cooperate with an NFA investigation and ordered PIF and Cilli to discontinue trading and barred them from soliciting or accept funds for the pool.  In August 2008, NFA filed a complaint against PIF and Cilli before its Business Conduct Committee charging failure to cooperate with a NFA investigation.  In February 2009, NFA settled its complaint against PIF and Cilli, wherein both respondents agreed to withdraw from NFA membership and Cilli agreed to pay a $10,000 fine if he should ever re-apply for NFA membership or seek to be a principal of an NFA Member.  PIF agreed never to re-apply for NFA membership.

50.     On or about February 13, 2009, CFTC staff served a document subpoena on Defendants.  Defendants failed to provide to CFTC staff most of the documents requested under

the subpoena. In particular, Defendants failed to provide the CFTC with all correspondence with pool participants, all offering memoranda, all subscription agreements, and all account statements that were prepared or sent to pool participants.

51.    Cilli testified on or about February 25, 2009 to CFTC staff that he had destroyed, deleted, discarded, or lost most of the documents relating to PIF and PMFF. PIF failed to keep or maintain all book and records prepared in connection with its activities as the CPO of PMFF and failed to make the books and records of the CPO and the pool available to representatives of the NFA.

## V.    VIOLATIONS OF THE COMMODITY EXCHANGE ACT

## COUNT I

### *(7 U.S.C. §6b Commodities Fraud)*

52.    The allegations set forth in paragraphs 1 through 51 are re-alleged and incorporated herein by reference.

53.    Section 4b(a)(2)(i)-(iii) of the Act, 7 U.S.C. § 6b(a)(2)(i)-(iii) (2006), for conduct before June 18, 2008, makes it unlawful "for any person, in or in connection with any order to make, or the making of, any contract of sale of any commodity for future delivery, made, or to be made, for or on behalf of any other person if such contract for future delivery is or may be used for (A) hedging any transaction in interstate commerce in such commodity or the products or byproducts thereof, or (B) determining the price basis of any transaction in interstate commerce in such commodity, or (C) delivering any such commodity sold, shipped, or received in interstate commerce for the fulfillment thereof, - (i) to cheat or defraud or attempt to cheat or defraud such other person; (ii) willfully to make or cause to be made to such other person any false report or statement thereof, or willfully to enter or cause to be entered for such  person any false record

thereof; (iii) willfully to deceive or attempt to deceive such other person by any means whatsoever in regard to any such order or contract or the disposition or execution of any such order or contract, or in regard to any act of agency performed, with respect to such order or contract for such person."

54.     For conduct on or after June 18, 2008, Section 4b(a)(1)(A)-(C) of the Act, as amended by the CRA, to be codified at 7 U.S.C. § 6b(a)(1)(A)-(C), makes it unlawful "for any person, in or in connection with any order to make, or the making of, any contract of sale of any commodity in interstate commerce or for future delivery that is made, or to be made, on or subject to the rules of a designated contract market, for or on behalf of any other person – (A) to cheat or defraud or attempt to cheat or defraud the other person; (B) willfully to make or cause to be made to the other person any false report or statement or willfully to enter or cause to be entered for the other person any false record; (C) willfully to deceive or attempt to deceive the other person by any means whatsoever in regard to any order or contract or the disposition or execution of any order or contract, or in regard to any act of agency performed, with respect to any order or contract for ... the other person."

55.     As more fully set forth above, Cilli and PIF, through Cilli, violated Section 4b(a)(2)(i)-(iii) of the Act, 7 U.S.C. § 6b(a)(2)(i)-(iii) (2006) (for conduct before June 18, 2008), in connection with commodity futures transactions made for or on behalf of pool participants, by making misrepresentations of material facts to pool participants, by failing to disclose material information to the pool participants, by sending false account information to pool participants, and by misappropriating pool funds.  For those fraudulent acts, omissions or failures that occurred on or after June 18, 2008, Cilli and PIF, through Cilli, violated Section 4b(a)(1)(A)-(C) of the Act, as amended by the CRA, to be codified at 7 U.S.C. § 6b(a)(1)(A)-(C).

56.     Cilli engaged in the acts and practices described above either knowingly or with intent to deceive or with reckless disregard for the truth.

57.     Each misrepresentation or omission of a material fact, including but not limited to those specifically alleged herein, is alleged as a separate and distinct violation of Section 4b(a)(2)(i)-(iii) of the Act, 7 U.S.C. § 6b(a)(2)(i)-(iii) (2006), for conduct that occurred before June 18, 2008, or Section 4b(a)(1)(A)-(C) of the Act, as amended by the CRA, to be codified at 7 U.S.C. § 6b(a)(1)(A)-(C), for conduct that occurred after June 18, 2008.

58.     The foregoing acts, omissions and failures of Cilli, occurred within the scope of his agency, employment or office with PIF; therefore, PIF liable for these acts, omissions and failures in violation of the Act pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B), and CFTC Regulation 1.2, 17 C.F.R. § 1.2.

59.     Cilli controlled PIF, directly or indirectly, and did not act in good faith or knowingly induced, directly or indirectly, PIF's acts constituting the violations alleged in this Count.  Therefore, pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b), Cilli is liable for PIF's violations of Section 4b(a)(2)(i)-(iii) of the Act, for conduct before June 18, 2008, and Section 4b(a)(1)(A)-(C) of the Act, as amended by the CRA, for conduct on or after June 18, 2008.

### COUNT II

#### *(7 U.S.C. §6o Fraud by a CPO or AP of a CPO)*

60.     The allegations set forth in paragraphs 1 through 51 are re-alleged and incorporated herein by reference.

61.     Section 4o(1)(A) and (B) of the Act, as amended by the CRA, to be codified at 7 U.S.C. § 6o(1)(A) and (B), makes it unlawful for CPOs or APs of CPOs, by use of the mails or

any means or instrumentality of interstate commerce, directly or indirectly - (A) to employ any device, scheme or artifice to defraud any participant or prospective participant, or (B) to engage in any transaction, practice, or course of business which operates as a fraud or deceit upon any participant or prospective participant.

62.     A CPO is a person engaged in a business that is of the nature of an investment trust, syndicate, or similar form of enterprise, and who, in connection therewith, solicits, accepts, or receives from others, funds, securities, or property, either directly or through capital contributions, the sale of stock or other forms of securities, or otherwise, for the purpose of trading in any commodity for future delivery on or subject to the rules of any contract market or derivatives transaction execution facility.  7 U.S.C. § 1a(5).

63.     PIF is registered as a CPO.  Cilli is registered as an AP of PIF.  PIF and Cilli acted as a CPO and an AP of a CPO, respectively, by engaging in a business that is of the nature of an investment trust, syndicate, or similar form of enterprise by managing and trading for the PMFF commodity pool, and by soliciting and accepting funds from at least four participants for the purpose of trading on-exchange commodity futures contracts.

64.     As set forth more fully above, Cilli's acts, omissions and failures that violate 7 U.S.C. § 6b(a)(2)(i)-(iii) (2006) (for conduct before June 18, 2008) and 7 U.S.C. § 6b(1)(A)-(C) (for conduct on or after June 18, 2008), as amended by the CRA, also constitute violations of 7 U.S.C. § 6o(1)(A)-(B).

65.     Each scheme or artifice to defraud and each transaction, practice, or course of business which operated as a fraud or deceit, including but not limited to those specifically alleged herein, is alleged as a separate and distinct violation of Section 4o(1)(A) and (B) of the Act, 7 U.S.C. § 6o(1)(A) and (B).

66.     The foregoing acts, omissions and failures of Cilli, occurred within the scope of his agency, employment or office with PIF; therefore, PIF liable for these acts, omissions and failures in violation of the Act pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B), and CFTC Regulation 1.2, 17 C.F.R. § 1.2.

67.     Cilli controlled PIF, directly or indirectly, and did not act in good faith or knowingly induced, directly or indirectly, PIF's acts constituting the violations alleged in this Count.  Therefore, pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b), Cilli is liable for PIF's violations of Section 4o(1)(A)-(B) of the Act.

## COUNT III

### (7 U.S.C. §13(a)(4) False Statements to A Futures Association)

68.     The allegations set forth in paragraphs 1 through 51 are re-alleged and incorporated herein by reference.

69.     Section 9(a)(4) of the Act, 7 U.S.C. §13(a)(4), makes it a felony for any person to willfully falsify, conceal, or cover up by any trick, scheme, or artifice to defraud a material fact, make any false, fictitious, or fraudulent statements or representations, or make or use any false writing or document knowing the same to contain false, fictitious, or fraudulent statement or entry to a registered entity, board of trade, or futures association designated or registered under this Act acting in furtherance of its official duties under this Act.

70.     The NFA is a registered futures association under Section 17 of the Act, 7 U.S.C. § 21.

71.     As set forth more fully above, from May-June 2008, NFA conducted an investigation, acting in furtherance of its official duties under the Act, of PIF and Cilli and requested all documents relating to pool participants.  Cilli failed to produce the requested

documents. Instead, Cilli willfully and falsely told the NFA that PMFF never had any pool

participants or investors, only individuals who had loaned him and PIF money. Cilli knew that

PMFF had at least four pool participants when he made these false statements to NFA.

72.     Cilli violated Section 9(a)(4) of the Act, 7 U.S.C. §13(a)(4), by willfully and

falsely representing to NFA in June 2008 that there were no pool participants but only

individuals who loaned Cilli or PIF money.

73.     Each false statement to NFA is alleged herein as a separate and distinct violation

of Section 9(a)(4) of the Act, 7 U.S.C. §13(a)(4).

74.     The foregoing acts, omissions and failures of Cilli, occurred within the scope of

his agency, employment or office with PIF; therefore, PIF liable for these acts, omissions and

failures in violation of the Act pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B),

and CFTC Regulation 1.2,17 C.F.R. § 1.2.

## COUNT IV

### *(17 C.F.R. § 4.7(b)(2)-(3) Failure to Send Quarterly and Annual Reports)*

75.     The allegations set forth in paragraphs 1 through 51 are re-alleged and

incorporated herein by reference.

76.     CFTC Regulation 4.7(b)(2), 17 C.F.R. § 4.7(b)(2), requires all registered CPOs

operating under the exemptions of Regulation 4.7 to distribute to all pool participants signed and

affirmed quarterly statements, computed in accordance with generally accepted accounting

principles, that indicate (i) the NAV of the exempt pool as of the end of the reporting period, (ii)

the change in NAV from the end of the previous reporting period, and (iii) the NAV per

outstanding unit of participation in the exempt pool as of the end of the reporting period.

77.     CFTC Regulation 4.7(b)(3), 17 C.F.R. § 4.7(b)(3), requires all registered CPOs operating under the exemptions of Regulation 4.7 to distribute to all pool participants an annual report which contains at the minimum (A) a statement of financial condition at the close of the exempt pool's fiscal year, (B) a statement of income (loss) for that year and, (C) appropriate footnote disclosure and any other material.  Such annual report must be made in accordance with generally accepted accounting principles and a copy thereof must be filed with the NFA.

78.     PIF is a registered CPO that operated under the exemptions of 17 C.F.R. § 4.7. PIF never distributed to all PMFF pool participants quarterly NAV statements or an annual report.  Thus, PIF violated CFTC Regulation 4.7(b)(2)-(3), 17 C.F.R. § 4.7(b)(2)-(3).

79.     Cilli, directly or indirectly, controlled PIF and did not act in good faith or knowingly induced, directly or indirectly, PIF's acts constituting the violations alleged in this Count.  Therefore, pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b), Cilli is liable for PIF's violations of Regulation 4.7(b)(2)-(3).

## COUNT V

### *(7 U.S.C. §6n(3)(A) and 17 C.F.R. §§ 1.31(a) and 4.7(b)(4) Failure to Keep Records)*

80.     The allegations set forth in paragraphs 1 through 51 are re-alleged and incorporated herein by reference.

81.     Section 4n(3)(A) of the Act, 7 U.S.C. § 6n(3)(A), requires all CPOs registered under the Act to maintain books and records and file such reports in such form and manner as may be prescribed by the CFTC.  All such books and records shall be kept for a period of at least three years, or longer if the CFTC so directs, and shall be open to inspection by any representative of the CFTC or Department of Justice.  Upon request of the CFTC, all registered CPOs shall furnish the name and address of each client, subscriber, or participant, and submit

samples or copies of all reports, letters, circulars, memorandums, publications, writings, or other literature or advice distributed to clients, subscribers, or participants, or prospective clients, subscribers, or participants.

82.     Under CFTC Regulation 1.31(a)(1), 17 C.F.R. § 1.31(a)(1),  all books and records required to be kept by the Act or by the CFTC's Regulations shall kept for a period of five years from the date thereof and shall be readily accessible during the first 2 years of the 5-year period. Under CFTC Regulation 1.31(a)(2), 17 C.F.R. § 1.31(a)(2), a copy of such books and records shall be provided to a representative of the Commission upon the representative's request.

83.     CFTC Regulation 4.7(b)(4), 17 C.F.R. § 4.7(b)(4), provides that CPOs operating a pool under the exemptions of Regulation 4.7, must maintain the annual and quarterly reports required by 17 C.F.R. § 4.7(b)(2)-(3) and all books and records prepared in connection with its activities as the CPO of the exempt pool at its main business address and must make such books and records available to representatives of the CFTC and the NFA in accordance with the provisions of 17 C.F.R. § 1.31.

84.     PIF is registered and acting as a CPO under the Act and Cilli is its principal.

85.     PIF filed notice that it was operating under the exemptions of 17 C.F.R. § 4.7 on or about October 18, 2006.

86.     In or around May-June 2008, NFA requested PIF to produce its books and records.  PIF refused to produce its books and records to NFA in violation of 17 C.F.R. § 4.7(b)(4).

87.     In February 2009, the CFTC subpoenaed PIF's books and records from Defendants and took testimony under oath from Cilli.  Defendant Cilli admitted that he did not maintain all of PIF's books and records prepared in connection with PIF's activities as the CPO

of the exempt pool and did not maintain the required annual or quarterly reports for the PMFF pool. Thus, PIF violated 7 U.S.C. § 6n(3)(A) and 17 C.F.R. §§ 1.31(a) and 4.7(b)(4).

88.     Cilli controlled PIF, directly or indirectly, and did not act in good faith or knowingly induced, directly or indirectly, PIF's acts constituting the violations alleged in this Count. Therefore, pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b), Cilli is liable for PIF's violations of Section 4n(3)(A) of the Act, and CFTC Regulations 1.31(a) and 4.7(b)(4).

## VI.     RELIEF REQUESTED

**Wherefore**, the Commission respectfully requests that the Court, as authorized by Section 6c of the Act, 7 U.S.C. § 13a-1, and pursuant to its own equitable powers, enter:

A.     An order finding that Defendants violated: Section 4b(a)(2)(i)-(iii) of the Act  7 U.S.C. § 6b(a)(2)(i)-(iii) (2006) (for conduct before June 18, 2008 and Section 4b(a)(1)(A)-(C) of the Act, as amended by the CRA, to be codified at 7 U.S.C. § 6b(a)(1)(A)-(C) (for conduct on or after June 18, 2008); Sections 4o(1), 4n(3)(A) and 9(a)(4) of the Act, as amended by the CRA, to be codified at 7 U.S.C. §§ 6b(a)(1)(A)-(C), 6o(1), 6n(3)(A), and 13(a)(4); and CFTC Regulations 1.31(a) and 4.7(b)(2)-(4), 17 C.F.R. §§ 1.31(a) and 4.7(b)(2)-(4) (2010);

B.     An order of permanent injunction prohibiting Defendants and any of their agents, servants, employees, assigns, attorneys, and persons in active concert or participation with any Defendants, including any successor thereof, from engaging, directly or indirectly, in any violation of Sections 4b(a)(1), 4o(1), 4n(3)(A), and 9(a)(4) of the Act, as amended by the CRA and the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010, Pub. L. No. 111-203, Title VII (the Wall Street Transparency and Accountability Act of 2010), §§701-774, 124 Stat. 1376 (enacted July 21, 2010), to be codified at 7 U.S.C. §§ 6(b)(a)(1), 6o(1), 6n(3)(A), and 13(a)(4), and CFTC Regulations 1.31(a) and 4.7(b)(2)-(4), 17 C.F.R. §§ 1.31(a) and 4.7(b)(2)-(4) (2010);

C.     An order of permanent injunction prohibiting Defendants and any of their agents, servants, employees, assigns, attorneys, and persons in active concert or participation with any Defendants, including any successor thereof, from;

1)     trading on or subject to the rules of any registered entity, as that term is defined in Section 1a of the Act, as amended, to be codified at 7 U.S.C. § 1a;

2)     entering into any transactions involving commodity futures, options on commodity futures, commodity options (as that term is defined in CFTC Regulation 32.1(b)(1), 17 C.F.R. § 32.1(b)(1)(2010)) ("commodity options"), and/or foreign currency (as described in Section 2(c)(2)(B) and 2(c)(2)(C)(i) of the Act, as amended, to be codified at 7 U.S.C. §§ 2(c)(2)(B) and 2(c)(2)(C)(i) ("forex contracts")), for their own personal account or for any account in which they have a direct or indirect interest;

3)     having any commodity futures, options on commodity futures, commodity options, and/or forex contracts traded on their behalf;

4)     controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity futures, options on commodity futures, commodity options, and/or forex contracts;

5)     soliciting, receiving, or accepting any funds from any person for the purpose of purchasing or selling any commodity futures, options on commodity futures, commodity options, and/or forex contracts;

6)     applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring such registration or exemption from registration with the Commission, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2010); and

7)     acting as a principal (as that term is defined in CFTC Regulation 3.1(a), 17 C.F.R. § 3.1(a) (2010)), agent or any other officer or employee of any person registered, exempted from registration or required to be registered with the Commission, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9)(2010);

D.      An order directing Defendants, as well as any other person or entity associated with them, including any successor thereof, to disgorge, pursuant to such procedures as the Court may order, all benefits received including, but not limited to, salaries, commissions, loans, fees, revenues and trading profits derived, directly or indirectly, from the acts or practices that constitute violations of the Act or CFTC Regulations, as described herein, including pre- and post-judgment interest thereon from the date of such violations;

E.      An order directing Defendants, as well as any other person or entity associated with them, including any successor thereof, to make full restitution, pursuant to such procedures as the Court may order, by making whole each and every pool participant whose funds were received or utilized by them as a result of the acts or practices that constitute violations of the Act or CFTC Regulations, as described herein, including pre- and post-judgment interest thereon from the date of such violations;

F.      An order directing each Defendant to pay a civil monetary penalty in amounts of not more than the greater of (1) triple the monetary gain to Defendants for each violation of the Act and/or CFTC Regulations, or (2) $130,000 for each violation of the Act on or before October 22, 2008, and $140,000 for each violation of the Act after October 22, 2008;

G.      Enter an order requiring Defendants to pay costs and fees as permitted by 28 U.S.C. §§ 1920 and 2412(a)(2); and

H.      An order providing such other and further relief as the Court may deem necessary and appropriate under the circumstances.

Respectfully submitted,

U.S. COMMODITY FUTURES TRADING COMMISSION
Stephen J. Obie
Regional Counsel

Dated: June 15, 2011

S/W. DEREK SHAKABPA
W. Derek Shakabpa
Senior Trial Attorney
*wshakabpa@cftc.gov*
David Acevedo
Chief Trial Attorney
*dacevedo@cftc.gov*
Commodity Futures Trading Commission
140 Broadway, 19th Floor
New York, NY 10005
(646) 746-9748
(646) 746-9940 (facsimile)